UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KIRK STEWART, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STEVE MORRIS, *et al.*, <br><br> Defendants. | Case No. 10-cv-04106-NJV <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 44, 54 |

# INTRODUCTION

Plaintiffs Kirk and Susan Stewart, their now-teenage son Cameron, and their house-guest Fred Otremba filed this action against Del Norte County ("DNC"), deputies of the Sheriff's Department of Del Norte County, and the former Del Norte County district attorney. The three adult plaintiffs allege that they were qualified medical marijuana patients and held valid "Prop 215" cards.[1] They contend that DNC Sheriff's deputies acted with an improper motive when they used federal agents to procure and serve a state-law warrant to search their property for marijuana, and that the warrant was invalid because the defendants omitted material information from the search warrant application. Plaintiffs further argue that the Sheriff's deputies either destroyed or failed to prevent the destruction of their marijuana by federal agents, even though the Sheriff's

---

[1] The Compassionate Use Act of 1996 ("CUA") was approved by California voters as Proposition 215. It is codified at Cal. Health & Saf. Code § 11362.5. It provides that sections of the Health & Safety Code that criminalize the possession and cultivation of marijuana, "shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." Cal. Health & Saf. Code § 11362.5(d). The Medical Marijuana Program Act ("MMPA") created a State-authorized medical marijuana identification card and a registry database for verification of qualified patients and their primary caregivers.

deputies knew that Kirk Stewart was legally entitled to possess the marijuana under state and local law. They argue that the former DNC district attorney, Mike Riese, wrongfully instructed the Sheriff's deputies to arrest Kirk Stewart and Fred Otremba on the day of the raid. Finally, they allege that DNC failed to adequately train its deputies regarding California and DNC medical marijuana laws and ordinances.

After this Court granted Defendants' motion to dismiss certain claims (*see* Doc. No. 18), the claims remaining are a 42 U.S.C. § 1983 claim alleging unlawful search and seizure under the Fourth and Fourteenth Amendments[2] against Steve Morris, Joe Garcia, Gene McManus and Michael Riese; a state tort conversion claim based on the seizure and destruction of their marijuana against DNC, Morris and Garcia; a *Monell* claim against DNC; and a claim for injunctive relief relating to how DNC handles medical marijuana.[3] Defendants now move for summary judgment on all of these claims.

The matter was fully briefed and the Court heard oral argument on August 13, 2013. The Court requested further briefing, which the parties provided. *See* Doc. Nos. 69-71. Based on the written and oral arguments of the parties, the undisputed material facts, and for the reasons set forth below, the court will grant Defendants' motion for summary judgment as to all remaining claims.

## UNDISPUTED FACTS

In 1997, Kirk Stewart was convicted of a felony for the cultivation and sale of marijuana. In 2007, he was charged with cultivating marijuana, but those state law charges were dismissed because Stewart was found to be a qualified patient and caregiver under Proposition 215. The state judge in that case ordered the DNC Sheriff's Department to return to Stewart the marijuana plants that had been confiscated. The Sheriff's Department could not comply with that order

---

[2] The Fourteenth Amendment does not apply to claims for unreasonable search and seizure. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (where more specific amendment provides protection, the "more generalized notions of 'substantive due process'" embodied in the Fourteenth Amendment do not guide analysis).

[3] The Court dismissed all claims against defendant Seth Cimino without prejudice, and also dismissed Plaintiffs' false arrest claim with prejudice. Doc. No. 18. Plaintiffs did not amend their complaint to re-plead their claims against Cimino.

because the plants had been destroyed. On July 8, 2008, Stewart filed a lawsuit against the DNC Sheriff's Department alleging violations of due process and conversion under state law. Sargent Steve Morris of the DNC Sheriff's Department was aware of Kirk Stewart's past criminal history and his prior status as patient and caregiver under Proposition 215; he also was aware that Stewart had filed a lawsuit against the Sheriff's Department for destroying his marijuana plants.

DNC Sheriff's deputy Seth Cimino conducted aerial surveillance for marijuana gardens in DNC. He observed marijuana growing in an open field and saw at least three separate areas where marijuana was being grown on a property. Cimino took several photographs on different flights. Cimino subsequently determined that the property on which he observed the marijuana belonged to Kirk and Susan Stewart. Cimino discussed his findings with Morris. Jon Rasmussen, a Special Agent with the Drug Enforcement Administration ("DEA"), examined Cimino's photographs.[4] Rasmussen concurred with Cimino's assessment that the plants visible in Cimino's photographs were consistent with the appearance of marijuana, and discerned three areas of cultivation.

Morris helped Rasmussen draft an affidavit to support his application for a search warrant. In his affidavit, Rasmussen did not indicate that prior cultivation charges against Kirk Stewart were dismissed due to Stewart's qualified patient and caregiver status. Rasmussen indicated Cimino had observed three separate cultivation areas during his surveillance flights but did not specify how much marijuana Cimino observed being grown in each of the three cultivation areas. When Morris and Rasmussen appeared before DNC Superior Court Judge Follett to have Rasmussen swear out the warrant, neither Morris nor Rasmussen disclosed to Judge Follett that Stewart had been a qualified patient and caregiver under Proposition 215, or that prior cultivation charges against Stewart had been dismissed on that ground. Judge Follett issued the search warrant based on Rasmussen's affidavit on August 14, 2008.

That same day, Rasmussen and three other DEA agents cooperated with four DNC deputies (Morris, Joe Garcia, Gene McManus and Allen Dubreuil) to serve the warrant.

---

[4] Rasmussen and his DEA team were conducting eradication efforts in Northern California during Campaign Against Marijuana Planting season and had approached Cimino earlier and offered to help the DNC Sheriff's Department with any of their marijuana eradication efforts.

3

1    Plaintiffs admit that they were growing at least fifty plants at the property, and that there
2    was dried marijuana inside the house.⁵  *See* Doc. No. 61-1 (Decl. of Kirk Stewart) at ¶¶ 49, 52; *see*
3    *also* Doc. No. 61-2 (Decl. of Susan Stewart) at ¶ 18 (far less than 100 pounds of dried marijuana);
4    Doc. No. 61-3 (Decl. of Fred Otremba) at ¶ 5 (far less than 100 pounds of dried marijuana).

    DNC officer Garcia seized 18 firearms, 2 black powder muzzle loaders, a black powder
    pistol, ammunition, dried marijuana, and samples of growing marijuana.

    The DEA agents seized the remaining marijuana and turned it over to the DNC Sheriff's
    Department for destruction.⁶  Doc. No. 46, Ex. N (transcript of Feb. 19, 2009 motion to suppress
    hearing) at 27; *see also id*. at 36 (Rasmussen testified that DEA agents physically cut the plants off
    the ground), *id*. at 69 (Morris testified that DEA agents "immediately said, 'We want this
    marijuana destroyed.'  They didn't take that marijuana to San Francisco'"), *id*. at 87 ("S.A.
    Rasmussen could not leave the property with marijuana on the ground.  That's part of his
    assignment;" Rasmussen ordered the marijuana destroyed; DEA was in charge of marijuana).

    But for some amount of dried marijuana and the samples that were collected by the DNC
    Sheriff's deputies, all of the marijuana was destroyed by the DNC Sheriff's Department.  *See* Doc.
    No. 60-4 (Olson Decl.), Exs. P & Q; Doc. No. 46, Ex. N at 69; Doc. No. 62 (Olson Decl.), Ex. A
    (Morris Dep.) at 73-74 (DNC took the marijuana from the property and stored it in a boating shed
    for two days before taking it out to remote location in the woods to bury it).  Plaintiffs
    subsequently declined DNC's offer to return the marijuana in its possession.

---

⁵ The Court notes for the record that Defendants contend there were more than 80 plants growing on the property, and approximately 100 pounds of dried marijuana inside the house.  To the extent the amount of marijuana is material to the issues to be decided, the Court will adopt Plaintiffs' representations about the amount of marijuana growing on the property and found in the house.

⁶ Plaintiffs argue that the DNC -- not the DEA -- seized the marijuana based on the following facts: (1) Rasmussen testified that the DEA "had no intention of charging [Stewart] federally with marijuana" unless he found "an amount that maybe met with the federal expectations" and intended to keep any prosecution at state level (Doc. No. 46, Ex. N at 23, 26); (2) the DEA agents did not themselves take the growing marijuana with them or personally destroy it; and (3) DNC Deputies decided on their own how to destroy the marijuana. None of these facts constitute evidence that the DEA agents did not seize the marijuana and turn it over to DNC Sheriff's deputies for destruction.  Plaintiffs' interpretation of these facts amounts to nothing more than speculation and does not create a triable issue of fact for purposes of summary judgment.

Morris arrested Kirk Stewart and Otremba for weapons' violations (both were felons and could be charged for possessing a firearm), but did not charge them with cultivating marijuana until the next day.  Kirk Stewart moved to suppress evidence of the firearms seized at his home in the state criminal proceedings.  Stewart argued that the firearms were found pursuant to an invalid warrant.  He contended the warrant was invalid because (1) Morris had deliberately failed to disclose to the magistrate issuing the warrant that Stewart had a medical marijuana card; and (2) Morris failed to determine whether Stewart had a medical marijuana card in August 2008 or whether he was a designated caregiver before executing the warrant.  Doc. No. 63-4, Ex. P (transcript of Feb. 19, 2009 motion to suppress hearing) at 93-94.  Had Morris made these disclosures, Stewart argued there would not have been probable cause to issue the warrant.  The state court judge denied the motion to suppress evidence.  *Id*. at 99-100.

After pleading *nolo contendere* to the felon-in-possession charge, Stewart sought to change his plea, and filed a second motion to suppress.  Stewart once more argued that the search warrant affidavit intentionally or recklessly omitted facts that were material to the probable cause determination, to wit, his Prop 215 card and his status as a qualified caregiver.  Doc. No. 46, Ex. F.  The state court denied the second motion to suppress on procedural grounds.

The California Court of Appeal assumed *arguendo* that Morris and/or Rasmussen's omissions were in fact deliberate.  It nonetheless found that probable cause still existed to issue the warrant:

> The express addition of this information to the affidavit would not "render the search warrant" insufficient to support a finding of probable cause.  The affidavit described marijuana growing in three separate locations in an open field . . . suggesting the amount of marijuana plants exceeded the limit permitted by the Compassionate Use Act of 1996.  In addition, the affidavit noted appellant has a prior conviction for cultivating marijuana and possessing it for sale.  Based on the totality of circumstances and regardless of whether the magistrate was aware of the prior case and appellant's possession of a medical marijuana prescription card in 2007, there was probable cause for the issuance of the search warrant.

*People v. Stewart*, 2011 W.L. 6890391, *5 (Cal. App. Dec. 30, 2011).  The Court of Appeal denied rehearing, and the California Supreme Court denied review.  *People v. Stewart*, 2012 Cal. App. LEXIS 173 (Jan. 27, 2012); *People v. Stewart*, 2012 Cal. LEXIS 2237 (March 14, 2012).

5

## JURISDICTION AND VENUE

This Court has original federal question jurisdiction over actions brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. All parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 4 & 9. Venue is proper in this district because the events or omissions giving rise to the claims occurred in Del Norte County, which is located in the Northern District of California, Eureka Division. *See* 28 U.S.C. §§ 84, 1391(b).

## LEGAL STANDARD ON SUMMARY JUDGMENT

A court "shall" grant summary judgment when the pleadings, discovery, and evidence show that there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the action, and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact exists. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted); *see also* Fed. R. Civ. P. 56(c)(1). Courts considering summary judgment motions are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Liberty Lobby*, 477 U.S. at 248.

## DISCUSSION

### I. SECTION 1983 CLAIM BASED ON UNLAWFUL SEARCH & SEIZURE

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person

1   within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

2   by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

3   or other proper proceeding for redress…" 42 U.S.C. § 1983.  Plaintiffs contend that defendants

4   Garcia, McManus and Morris violated their rights under the Fourth Amendment of the United

5   States Constitution by securing an invalid warrant based on material omissions.  Plaintiffs contend

6   that Riese violated their rights by telling Morris to arrest Kirk Stewart and Otremba despite the

7   lack of any criminal indicia at the scene, and that Riese would "make something stick."

### A. Collateral estoppel bars Plaintiffs' Section 1983 claim.

Collateral estoppel, or issue preclusion, bars re-litigation of an issue decided at an earlier proceeding where (1) the issue necessarily decided at the earlier proceeding is identical to the one which is sought to be re-litigated; (2) the earlier proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.  *See Gottlieb v. Kest*, 141 Cal. App. 4th 110, 148 (2006).[7]  Issues that have already been litigated in a criminal hearing in state court may bar the re-litigation of identical issues in a federal civil rights action.  *See Haupt v. T.D. Dillard*, 17 F.3d 285, 288-90 (9th Cir. 1994) (probable cause); *Ayers v. City of Richmond*, 895 F.2d 1267, 1270-71 (9th Cir. 1990) (motion to suppress evidence).

Defendants argue that the state court's conclusion that the search warrant was valid bars Plaintiffs from re-litigating the issue here.  At the hearing, the Court requested further briefing on the issue of collateral estoppel.  In their supplemental brief, Plaintiffs argue that the issue decided by the state court is not identical to the one being litigated here (*i.e.*, the validity of the warrant). *See* Doc. No. 69 (response to request for further briefing on applicability of collateral estoppel). They fail to oppose the application of the other two factors to this case, finality and privity.  *Id*.; *see also* Doc. No 60 (only arguing cursorily that Otremba lacks privity because he did not file a motion to suppress in the trial court).  Otremba, in fact, argued the Morris material omission issue in a February 2009 suppression hearing.  *See* Doc. No. 63-4 at 93-94.  The Court therefore only

---

[7] State law governs the application of collateral estoppel by a state court judgment in a federal civil rights action.  *Allen v. McCurry*, 449 U.S. 90, 96 (1980).

addresses the first factor, and finds that the issue decided by the state court (the validity of the warrant) is identical to the one Plaintiffs ask this Court to re-visit.

The Court first notes that Plaintiffs' characterization of the state proceedings is misleading. Plaintiffs argue that the "[c]hallenges to the validity of the warrant based on the deficiencies in the warrant affidavit were not fully and fairly litigated in the Stewart and Otremba criminal proceedings." Doc. No. 60 at 24. They contend that the motion to suppress "did not directly address the issue of omission of material facts from the warrant affidavit or the retaliation against Kirk Stewart." *Id*. at 25. They further contend that the appeal Kirk Stewart filed "was limited to the evidence presented during the hearing on the motion to suppress, which . . . was not a full and fair hearing on the validity of the warrant." *Id*. Plaintiffs reprised the same points at oral argument, and represented that Stewart only presented those arguments informally in the state proceedings. As quoted above, however, whether the argument was presented formally or informally, both the trial court and the Court of Appeal actually considered and rejected Plaintiffs' argument that the "missing facts" were material. *See supra*. The California Court of Appeal squarely rejected Plaintiffs' argument that any facts omitted (deliberately or not) from Rasmussen's affidavit were material and upheld the validity of the search warrant. The Court of Appeal denied rehearing, and the California Supreme Court denied Stewart's petition for review.

Second, even if these issues were material, "a former judgment . . . is a collateral estoppel on issues which were raised even though some factual matters or legal arguments which could have been presented were not." *Murphy v. Murphy*, 164 Cal. App. 4th 376, 401 (2008); *see also Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) ("If a party could avoid issue preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined"). That Plaintiffs could have offered additional facts or theories in the state court proceedings therefore does not preclude the application of collateral estoppel in this instances.

Third, the additional "facts and circumstances" Plaintiffs argue were not presented during the criminal proceedings (Doc. No. 60 at 26-28) were either considered therein, or are immaterial to the probable cause analysis.

- As noted above, the Court of Appeal specifically addressed the 2007 case against Stewart and his possession of a Prop 215 card at the time ("facts" 2-3).
- Morris' alleged animus toward Stewart and retaliatory intent in orchestrating the 2008 search ("facts" 4-10), even if true, are not material. *See Graham v. Conner*, 409 U.S. 386, 397 (1989) ("The subjective motivations of the individual officers . . . ha[ve] no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment"); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (actual motivation of officers cannot form basis for Fourth Amendment challenge).
- The allegation that Rasmussen lied about Cimino entering the Stewart property ("fact" 12) is based on a misreading of the application for the search warrant rather than on personal knowledge. Doc. No. 63-2, ¶ 7 (Cimino Decl. explaining language in affidavit).
- The allegation that Garcia and Morris unlawfully entered the Stewart property 6 weeks before the August 2008 raid does not "implicate[] the doctrine of fruit of the poisonous tree" nor "call[] into question whether the actual source of the information contained in the warrant affidavit was from an unlawful search of private property with a subsequent over-flight done and photographs taken as cover" ("fact" 11). Plaintiffs' allegation is nothing more than speculation. As noted above, Cimino explained in a sworn declaration that Plaintiffs' interpretation of the Rasmussen search warrant application was erroneous, and there is absolutely no evidence in the record that Cimino's aerial photographs were taken as "cover."
- Finally, Plaintiffs argue that the failure to acknowledge in the affidavit that Cimino's aerial photographs were taken at two different points in time, "caus[ed] the appearance of a much greater sized growing operation than it actually was." Opp'n at 27 ("fact" 13). Plaintiffs, however, admit that the photographs accurately depict a total of 50 plants being grown in three separate growing areas. *Id*. This is sufficient probable cause under either federal or California law. *See infra* Section I(B).

9

1 The Court accordingly finds that each of the "material facts" Plaintiffs want to litigate here either have already been litigated in the state criminal proceedings or are immaterial to the probable cause analysis.

Fourth, Plaintiffs argue that they are not collaterally estopped from re-litigating the validity of the warrant because they were not allowed to present evidence that someone "planted" a .22 caliber firearm in a dresser in a common area of the Stewart's property.[8] (This firearm was the basis for the unlawful possession charges against Kirk Stewart and Otremba.) Kirk Stewart continues to aver that he was not guilty of unlawful possession, and that he entered the *nolo contendere* plea to avoid a jury trial and to avoid the prosecution of his wife. Doc. No. 61-1 (Decl. of Kirk Stewart) at ¶¶ 82-84. Susan Stewart declares that she was "very careful about keeping the guns locked in the safes out of fear that" DNC officials would raid her home. Doc. No. 61-2 (Decl. of Susan Stewart) at ¶ 33. She was the only one who knew the combinations for the safes. *Id*. at ¶ 24. After being shown the warrant, she opened the safe in her son's room and saw the .22 pistol was inside the safe. *Id*. at ¶ 31. Morris was watching her. *Id*. at ¶ 27. The implication is that one of the law enforcement officers at the scene either took the weapon from the safe and planted it in the dresser, or included false information in the "evidence/property sheet." *Id*. at ¶¶ 41, 45. While Plaintiffs' declarations do create a triable issue of fact as to whether the gun was in the dresser, that disputed fact is not *material*: both Morris' subjective intent and any post-search evidence tampering are not material to the probable cause analysis and validity of the warrant. *See supra* at 8-9 (animus irrelevant); *infra* Section I(B) (probable cause analysis).

Finally, the Court finds no injustice in the application of collateral estoppel in this instance. *Cf*. Doc. No. 69. Plaintiffs had the opportunity to fully litigate these issues in the state proceedings – and did litigate these issues.

---

[8] Plaintiffs raised this argument in opposition to Defendants' qualified immunity argument. *See* Doc. No. 60 at 30. When the Court at the hearing asked them to explain the relevance of the planted gun to the qualified immunity analysis, Plaintiffs explained that the planted weapon (1) shows that the entire search and seizure was motivated by Morris' retributory intent, and (2) is another issue that was not fully addressed during the suppression hearing and therefore should be considered by this Court. Plaintiffs' argument regarding the weapon, in fact, is not relevant to the qualified immunity analysis but rather goes to the validity of the warrant.

10

1  The Court finds that all relevant factors weigh in favor of applying the collateral estoppel doctrine in this instance. Plaintiffs are barred from re-litigating the validity of the warrant in this Court. Their Section 1983 claim based on unlawful search and seizure fails.

**B. If collateral estoppel does not bar Plaintiffs' claims, the Court finds that the warrant was supported by probable cause.**

The parties dispute whether the search and seizure was performed under federal or state law. Whether the warrant was issued under federal or state law, the reasonableness of the search and seizure for purposes of a Section 1983 claim is reviewed under the Fourth Amendment, not under state law. *See Virginia v. Moore*, 553 U.S. 164, 174-75 (2008); *see also Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011) (violation of state law does not constitute violation of Fourth Amendment).[9] Probable cause under the Fourth Amendment only requires a showing that a "fair probability that contraband or evidence of a crime will be found in a particular place" given the circumstances set forth in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Court does not decide whether the DNC and DEA were acting under federal or state law, but finds that under either federal or state law, there was probable cause to issue the warrant.

In his affidavit, Rasmussen reported that three separate cultivation areas were visible from Cimino's aerial surveillance. Plaintiffs admit that they were growing at least fifty plants in three separate areas, and that Cimino's photographs depicted those fifty plants. Rasmussen also noted Kirk Stewart's past criminal history, including his prior conviction for sale of marijuana. A reasonable judge could conclude that there was a "fair probability" that a search would reveal evidence that Plaintiffs were growing marijuana for sale in contravention of federal, state, and even local law.[10] *See U.S. v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2004) ("'probable cause'

---

[9] The Court notes that Plaintiffs misunderstand the *Rooker-Feldman* Doctrine, which has no application here.

[10] Marijuana is a Schedule I substance under federal law, and any possession of marijuana by a private individual for any purpose is unlawful. *See infra*, Section II. A DNC Ordinance in effect at the time allowed medical marijuana patients to grow up to 99 plants in a 100 square-foot canopy. Plaintiffs contend they were in compliance with the ordinance; Defendants contend that Plaintiffs exceeded the number of plants allowed in the square footage of the gardens they were cultivating. Whether Plaintiffs were in compliance with the DNC Ordinance does not affect the probable cause analysis. As explained below, the CUA and MMPA only establish affirmative defenses. Plaintiffs cite no authority for their suggestion that the DNC Ordinance provides (or

11

1 means 'fair probability,' not certainty or even a preponderance of the evidence. . . . [A] magistrate
2 judge is only required to answer the 'commonsense, practical question whether there is 'probable
3 cause' to believe that contraband or evidence is located in a particular place' before issuing a
4 search warrant") (quoting *Gates*, 462 U.S. at 230, 246); *People v. Carrington*, 47 Cal. 4th 145,
5 163 (2009) ("The showing required in order to establish probable cause is less than a
6 preponderance of the evidence or even a prima facie case") (citing *Gates*, 462 U.S. at 235).

7 Neither the CUA nor the MMPA vitiates probable cause here even if the warrant was a
8 state law warrant. It is well-established under California law that the CUA does not invalidate
9 searches otherwise supported by probable cause:

> The CUA provides an affirmative defense to prosecution for the crimes of possession and cultivation . . . So long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval.

*People v. Kelly*, 47 Cal. 4th 1008, 1013 (2010). California courts also have concluded that the MMPA provides only an affirmative defense to prosecution; it does not create a new standard for probable cause, search or arrest. *See City of Claremont v. Kruse*, 177 Cal. App. 4th 1153, 1171 (2009). Nor does the CUA impose on law enforcement officers any duty to investigate whether CUA exceptions might apply to any given situation. *See People v. Fisher*, 96 Cal. App. 4th 1147, 1149-52 (2002) (CUA only establishes affirmative defense to prosecution of crime; it does not require officers to investigate the truth of a defendant's medical marijuana claim: "Investigation into the truth and legal effect of defenses to criminal charges is what motions and trials are for; to hold otherwise would create disorder and confusion"); *see also Browne v. Gossett*, 2006 U.S. Dist. LEXIS 5253, *15 (N.D. Cal. Jan. 27, 2006) ("Where, as here, law enforcement personnel have reason to believe that unprotected activities are taking place – perhaps in addition to protected activities – probable cause may exist despite the protections of the CUA. . . . the fact that plaintiffs were medical patients and primary caregivers does not, without more, refute a proper

even purports to provide) substantive legal protections greater than those of the CUA and MMPA.

finding of probable cause to search the property").

Plaintiffs mischaracterize how California courts have interpreted and applied both the CUA and MMPA. *See* Doc. No. 60 at 21-22. The cases Plaintiffs cite at most stand for the proposition that, if a defendant has established his possession of medical marijuana is legal under California law, California authorities must dismiss criminal charges and must return the marijuana that was confiscated. *See Browne, supra* (distinguishing between protections against searches and protections against arrests and prosecution). The Court notes the very recent California Court of Appeal case reaffirmed that "the status of qualified patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status, when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes." *Littlefield v. County of Humboldt*, 218 Cal. App. 4th 243, 252 (2013) (quoting *People v. Strasburg*, 148 Cal.App.4th 1052, 1058 (2007)).

Having been presented with an application for a warrant that showed three separate growing areas with at least fifty plants, and which stated the owner of the property had a prior conviction for sale of marijuana, a reasonable judge could conclude probable cause existed to issue the warrant under either federal or state law. Regardless of their status as Prop 215 cardholders and/or designated caregivers, Plaintiffs were not immune from investigation or arrest by the CUA and the MMPA.

**C. Defendant Riese is entitled to summary judgment on the Section 1983 claim.**

The Court previously dismissed Plaintiffs' false arrest claim against Riese. *See* Doc. No. 18 at 7-8. Riese was also named as a defendant in Plaintiffs' Section 1983 claim, although Plaintiffs' theory of liability as to Riese was not clearly articulated in their amended complaint. Plaintiffs now argue that although Morris told Riese that no indicia of felony cultivation or sales was located during the search, Riese told Morris to "go ahead and arrest [Kirk Stewart and Otremba], that he would make something stick." Doc. No. 60 at 37. Plaintiffs further argue that "Riese worked in conjunction with the DNC Sheriff's Office to violate Plaintiffs' rights" by approving the warrant prior to its execution and providing "advice" during the search. *Id*.; *see*

13

*also id*. at 38 ("Defendant Riese advised Morris to arrest Plaintiffs Stewart and Otremba despite a conversation regarding lack of probable cause, saying something to the effect of 'arrest them and I will make something stick'"). This is simply a re-packaging of Plaintiffs' false arrest claim, which has already been dismissed with prejudice.[11]

### D. The DNC Sheriff's deputies are entitled to qualified immunity on the Section 1983 claim.

"Law enforcement officers are entitled to qualified immunity if they act reasonably under the circumstances, even if the actions result in a constitutional violation." *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002). Here, there is no triable issue that McManus and Garcia acted reasonably under the circumstances; they are entitled to qualified immunity.[12] The Ninth Circuit repeatedly has held that officers acting pursuant to a facially valid warrant are entitled to qualified immunity against Fourth Amendment claims. *See, e.g., id*. at 1028 (line officers can "accept the word of their superiors" that warrant is valid); *see also Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 929-30 (9th Cir. 2001). The analysis for Morris is slightly different given Plaintiffs' allegations that Morris' actions were retaliatory and that he withheld material facts from the official who issue the warrant, but the result is the same. Because there was probable cause to issue the warrant, and because the warrant issued by the state court judge was facially valid, Morris too is entitled to qualified immunity. *See id*.; *see also Mills v. Graves*,

---

[11] The Court also notes that the officers found a firearm in proximity to Kirk Stewart and Otremba -- both felons -- and arrested them for unlawful possession of said firearm. The deputies on the scene had cause to arrest Stewart and Otremba for weapons violations, with or without Riese's concurrence. Moreover, Stewart pleaded no contest to that charge, vitiating any claim for false prosecution in this civil case. *See Szajer v. City of Los Angeles*, 632 F.3d 607, 610-12 (9th Cir. 2011) (where finding for plaintiff in a Section 1983 action would "necessarily invalidate" underlying criminal conviction, Section 1983 claim must be rejected pursuant to *Heck* Doctrine) (applying *Heck v. Humphrey*, 512 U.S. 477 (1994)).

[12] In fact, there is no triable issue of fact that Garcia and McManus violated Plaintiffs' Fourth or Fourteenth Amendment rights. The defendants were present on the day of the raid at the Stewart property. Plaintiffs, however, have offered no evidence that Garcia or McManus were involved in obtaining the search warrant, knew of the alleged "material omissions" in Rasmussen's application for the search warrant, or had any reason to doubt the search warrant issued by the state judge was valid. At the hearing, Plaintiffs argued that Garcia should be held liable because he was aware of Kirk Stewart's status as a qualified patient and caregiver. For the reasons stated earlier, Garcia's knowledge of this fact, even if true, is insufficient to raise a triable issue of material fact: the CUA and MMPA merely create an affirmative defense to prosecution; they do not create any bars to investigation or arrest.

930 F.2d 729, 731 (9th Cir. 1991) ("In the context of a police officer obtaining a warrant, immunity will be lost only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable").

### E. DNC has no municipal liability pursuant to *Monell*.

Plaintiffs seek to hold DNC liable under Section 1983 because the County "failed to provide training to its Sheriff's Office deputies in situations involving medical marijuana claims and there is no departmental policy in place with respect to seizures involving marijuana." Doc. No. 60 at 39. Local governments can be sued when an unconstitutional action by their employees results from "a policy statement, ordinance, regulation, or decision officially adopted by" its officers, of when the unconstitutional action takes place pursuant to "custom." *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). As the Court has already found that there was no constitutional violation in this instance, and that the warrant was supported by probable cause, it finds that no triable issue of material fact exists with regard to the *Monell* claim against DNC. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653-654 (9th Cir. 2001).

## II. CONVERSION

Plaintiffs Kirk and Susan Stewart and Otremba assert a conversion claim against DNC, Morris and Garcia for destroying their medical marijuana. Doc. No. 10, ¶¶ 103-109. Under the federal Controlled Substances Act, possession of marijuana by a private individual for any purpose is unlawful. *See* 21 U.S.C. §§ 812, Schedule I(c)(10), 844(a); *Gonzales v. Raich*, 545 U.S. 1, 27 (2005) ("The CSA designates marijuana as contraband for any purpose; in fact, by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses."). By virtue of the Supremacy Clause of the United States Constitution, the federal CSA prevails over California's CUA. *See Gonzales*, 545 U.S. at 29. During the hearing, Plaintiffs conceded that no conversion claim would lie if the marijuana was destroyed "under federal law."

As discussed above, there is no triable issue of fact that the marijuana that was seized and destroyed was destroyed pursuant to the orders of a DEA – *i.e. federal* – agent. Notably, Plaintiffs do not argue that DNC Sheriff's deputies could refuse that order. Instead, Plaintiffs speculate that

15

Morris and Garcia destroyed the marijuana under their own authority or that of the DNC rather than pursuant to the DEA orders. There are no facts to support that theory, and the unsupported theory does not create a triable issue of material fact. *See supra* at 4 & n.6.

Defendants are entitled to summary judgment on the conversion claim.

### III. DECLARATORY RELIEF

Because the Court found that their rights were not violated by the Defendants, Plaintiffs are not entitled to declaratory relief.

## CONCLUSION

For the reasons stated above, the Court finds that there is no triable issue of material fact regarding Plaintiffs' claims and that summary judgment is appropriate. The Clerk of the Court shall enter a separate judgment in favor of Defendants.

**IT IS SO ORDERED**.

Dated: September 17, 2013

_____
NANDOR J. VADAS
United States Magistrate Judge